UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JASON J. FABER,

                        Plaintiff,

v.

JUDY P. SMITH,
CAROL CARPENTER-NASLUND,
NICOLE SMITH, and
JANE AND JOHN DOES,

                        Defendants.

Case No. 14-CV-671-JPS

ORDER

The plaintiff filed this case on June 30, 2014, complaining that he was denied access to copies of account statements related to funds held for him by the Wisconsin Department of Corrections (DOC) in various U.S. Bank accounts. (Docket #1). The Court screened his complaint and allowed him to proceed on that claim; it thereafter allowed him to amend the complaint, but that amendment did not impact the substantive claims in the complaint. (*See* Docket #6, #31). The defendants moved to dismiss the plaintiff's amended complaint; that motion is fully briefed, and the Court now turns to consider it. (Docket #33, #34, #35, #36).

1.     BACKGROUND[1]

The defendants are financial- and/or business-related employees of Oshkosh Correctional Institution ("OSCI"), where plaintiff is incarcerated. (Docket #18, Ex. 2, ¶¶ 7–29). Those defendants, in compliance with Wisconsin Statutes, manage the complicated prisoner account systems. Generally, the

---

[1]This matter coming before the Court on a motion to dismiss, the Court will accept as true the plaintiff's well-pleaded factual assertions.

DOC manages inmate finances: the warden receives any money delivered to inmates and enters it into the appropriate inmates' accounts; inmates may only use money with approval of the warden; wages paid to inmates are, likewise, under the warden's control. *See, e.g.*, Wis. Stat. §§ 301.31, 301.32, 303.01(8). This control over accounts is both appropriate and necessary because DOC institutions have to make various deductions for items like *in forma pauperis* fees in federal court cases; unpaid crime victim and witness assistance charges; and money for release accounts. *See, e.g.*, 28 U.S.C. § 1915(b); Wis. Stat. § 814.29(1m)(e); Wis. Adm. Code DOC §§ 309.465, 309.466.

With respect to that last withholding, the DOC automatically deducts 10% of all money earned and/or received by inmates and places those funds in an interest-bearing release account, as designated by the DOC—in this case, the plaintiff's release account is managed by U.S. Bank. *See, e.g.*, Wis. Adm. Code DOC § 309.466; (Docket #18, Ex. 2, ¶ 32; Docket #18, Ex. 3, at 12[2]). The DOC generally provides inmates with monthly statements of regular accounts, but only "periodic" statements regarding the release account. *See* Wis. Adm. Code DOC § 309.47. From 1998 (when the plaintiff's release account was opened) until 2004 (when the plaintiff transferred from Green Bay Correctional Institution to OSCI), the plaintiff received quarterly account statements from U.S. Bank. (Docket #18, Ex. 2, ¶¶ 32, 34, 36–38).

---

[2]The plaintiff attached various documents to his amended complaint which are central to his claim. The Court may, therefore, clearly consider them in deciding this motion to dismiss. *See, e.g.*, *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (quoting *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994)).

Upon transferring to OSCI, the plaintiff no longer received those statements (though, apparently, he was kept apprised of his balance and interest via a Wisconsin Inmate Trust System statement he received). (Docket #18, Ex. 2, ¶ 40). He was not concerned about this situation from 2004 until 2011—apparently, he believed that U.S. Bank had simply stopped providing the statements. (*See* Docket #18, Ex. 2, ¶¶ 40–41). However, in 2011, he learned that inmates at other institutions continued to receive statements. (Docket #18, Ex. 2, ¶ 41). Thereafter, the plaintiff made extensive complaints to OSCI administration about not receiving U.S. Bank statements. (Docket #18, Ex. 2, at 11–17).

Defendant Judy Smith, who is warden at OSCI, responded to one of Faber's complaints as follows:

> This is in response to your recent correspondence regarding inmate accounts. You question the Business Office handling of inmate mail addressed to inmates from US Bank. US Bank sends all inmate account statements in one bulk mail envelope addressed to Oshkosh Correctional Institution, Attention Business Office at the Oshkosh Correctional Institution Business Office Post Office Box.
>
> DOC DAI Fiscal Audit Committee states in their recommendation of the handling of inmate savings accounts; "Institutions should not provide saving account numbers to inmates and not provide a copy of the quarterly savings account statements. Monthly trust account statement show the transaction. If asked for a statement, staff should charge the inmate per copy and redact the account number".
>
> Be assured OSCI Business staff are following DOC DAI Fiscal Audit Committee procedures.
>
> I trust this addresses your concerns.

(Docket #18, Ex. 3, at 11). OSCI apparently handles the account statements in this way so as to comply with DOC Department of Adult Institutions ("DOC DAI") recommendations. (*See* Docket #18, Ex. 3, at 16–17). As correctly recounted by Warden Smith in her response to the plaintiff, DOC DAI recommended that "[i]nstitutions should not provide savings account numbers to inmates and not provide a copy of the quarterly savings account statement. Monthly trust account statements show the transactions. If asked for a statement, staff should charge the inmate per copy and redact the account number." (*See* Docket #18, Ex. 3, at 11, 16–17). DOC DAI hoped that this practice would prevent inmates from obtaining their account numbers and passing them on to family members, who, in turn, would deposit money directly into prisoner accounts, thereby foregoing the deduction process discussed, above. (Docket #18, Ex. 3, at 16–17). U.S. Bank could not prevent the deposits, so the DOC was required to limit inmate access to their account numbers. (Docket #18, Ex. 3, at 16–17).

The plaintiff was unhappy, so he filed a complaint with the Consumer Financial Protection Bureau "against the operations of U.S. Bank." (Docket #18, Ex. 2, ¶ 62). A U.S. Bank Vice President responded to the plaintiff's complaint stating that: "The State of Wisconsin is the signer on the account," and that U.S. Bank could not discuss "the DOC's account without their consent," because of a U.S. Bank policy to release account information "at the request of the account owner(s) only." (Docket #18, Ex. 3, at 12).

The plaintiff then filed this lawsuit, claiming that his First Amendment rights had been violated.

2. DISCUSSION

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court should dismiss a complaint that fails to state a claim upon which relief can be granted. This is the case when the allegations in a complaint, even if entirely true, do not provide a basis for relief. *See, e.g., Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

In this case, the plaintiff has failed to state a claim, because—even accepting all of his allegations as true—there is no legal basis on which he could recover. Most importantly, he is not the owner of the account statements in question, and therefore has no First Amendment right to receive them. Moreover, even if he *were* entitled to receive them, the individual defendants are not personally responsible for depriving him of the statements and there is a legitimate reason for denying him access to the statements; both of these reasons form a separate basis for dismissal of his complaint.

2.1　Plaintiff Has No Right to Account Statements

To be sure, "[a]s a general rule, prisoners have a constitutionally-protected interest in *their* incoming and outgoing mail correspondence." *Van den Bosch v. Raemish*, 658 F.3d 778, 785 (7th Cir. 2011) (italics added) (citing *Jackson v. Frank*, 509 F.3d 389, 391 (7th Cir. 2007); *Kaufman v. McCaughtry*, 419 F.3d 678, 685 (7th Cir. 2005); *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999)).

The defendants, however, argue that the plaintiff cannot state a claim because the account statements are not *his* mail. The Court agrees. The account statements are mailed directly to OSCI's business office, making them OSCI's mail. Moreover, under Wisconsin law, the DOC holds custody of all funds—including monies placed in U.S. Bank interest-bearing release

accounts—received by inmates during their time in custody. *See, e.g.*, Wis. Stat. §§ 301.31, 303.01(8), 303.32; Wis. Adm. Code DOC §§ 309.466, 309.48. Accordingly, the statements are appropriately viewed as mail *addressed to the DOC, as opposed to the plaintiff*, a finding further buttressed by the statement of U.S. Bank's vice president referring to "the DOC's account."

In sum, because the plaintiff is not the owner of the account nor the addressee of the account statements, he is not the appropriate recipient of mail related to the account, and therefore his First Amendment rights are not violated by withholding the account statements.

The plaintiff cites two cases to dispute this determination, both of which are inapposite. First, he cites *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119 (1977), which he asserts held that "First Amendment speech rights are barely implicated when bulk mailings are restricted from a prisoner." (Docket #35 (quoting *Jones* incorrectly and adding emphasis)). But *Jones* dealt primarily with the First Amendment implications to the individuals *sending* the mail. Moreover, the fact that it involved bulk mailing, as does this case, does not make the cases comparable: *Jones* involved mail that would have been clearly directed to a prisoner, but the Court has decided that this case does not. So *Jones* does not change the Court's analysis. Second, the plaintiff cites *Spence v. McCaughtry*, 46 F. Supp. 2d 861 (E.D. Wis. 1999), a decision from former District Judge Myron Gordon, in which the Court determined that—to some extent—a prisoner's accounts were properly considered prisoner property. But, even if the accounts are property of the plaintiff, the DOC still maintains *custody* of them, and understandably receives statements on those accounts. So, even assuming that the accounts are property of the plaintiff, that would not necessarily mean that related

mail is property of the plaintiff. Rather, it is appropriate to conclude that the mail belongs to the DOC. The Court's holding on this topic, thus, remains the same.

2.2   Relation to Penological Interest

Even if the plaintiff *did* have a First Amendment interest in the account statements, the Court would still be obliged to determine that OSCI's decision to withhold the statements *does not* violate the plaintiff's First Amendment rights. In analyzing alleged First Amendment violations in the prison context, the Court does not apply strict scrutiny; instead, prison regulations of speech are valid if reasonably related to legitimate penological interests. *See, e.g.*, *Thornbrugh v. Abbot*, 490 U.S. 401, 413 (1989) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)). Courts must weigh four factors in assessing the validity of a prison's regulations: "(1) whether there is a 'valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it'; (2) whether the inmates have access to 'alternative means' of exercising the restricted right; (3) the 'impact [an] accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally'; and (4) whether the regulation is an 'exaggerated response to prison concerns.'" *Van den Bosch*, 658 F.3d at 785 (citing *Turner*, 482 U.S. at 89–91). The defendants must "articulate their legitimate governmental interest in the regulation," but courts must "accord 'substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for the most appropriate means to accomplish them.'" *Van den Bosch*, 658 F.3d at 786 (quoting *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003); citing *Turner*, 482 U.S. at 89). Moreover, "the

burden of persuasion is on the prisoner to disprove the validity of a regulation." *Van den Bosch*, 658 F.3d at 786 (citing *Overton*, 539 U.S. at 132).

The defendants have clearly articulated a legitimate governmental interest in the OSCI policy of refusing to provide inmates with copies of the account statements: inmates were looking at their account statements and having third parties make deposits directly into their accounts, which in turn prevented administrators from making adequate—and statutorily required—deductions from those deposits. Applying the four-prong analysis, this is amply clear. First, there is a valid, rational connection between the regulation and that purpose. Second, inmates apparently still receive notice of all activity on their release accounts via their Wisconsin Inmate Trust System statements and can even still receive copies of their U.S. Bank account statements—they simply must ask for a copy and pay for the copying fees. Third, the regulation clearly serves to protect valuable resources, as it reduces the amount of unauthorized deposits into prisoner accounts, in turn making sure that administrators do not need to spend large amounts of time searching inmate account statements for unauthorized deposits. Fourth, the stated concerns are not an exaggeration: the statutorily-mandated deductions ensure that victims and filing fees, among other items, are paid, and allowing a way around those deductions would potentially undermine the prisons' ability to collect those deductions. [3]

---

[3] The plaintiff asserts that this is not the case because "external deposits happen '…at most a handful of times a year' statewide for over 20,000 inmates." (Docket #35 (citing Docket #18, Ex. 2, ¶ 73; Docket #18, Ex. 3, at 18)). While the numbers may *currently* be low, there is no reason to believe that—if inmates were given access to account numbers—those numbers would not go up. With that said, even limited occurrences would be problematic, as it would require review for *all* inmates.

For these reasons, the Court has no doubt that OSCI's policy of refusing to provide free unredacted copies of account statements would, from a constitutional perspective, regulate the plaintiff's speech (*if* the plaintiff's speech were, in fact, at issue, which the Court has determined it is not).

2.3     Defendants Cannot Be Liable

Finally, even if the plaintiff were entitled to the account statements and the deprivation of those accounts violated his constitutional rights, the Court would still be obliged to dismiss this case, because the individual defendants cannot be held liable. All of the defendants are following a policy urged upon them by DOC DAI, so the Court is unable to find that any of them can be held liable, personally, under 28 U.S.C. § 1983. *See Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009) ("Public employees are responsible for their own misdeed but not for anyone else's."). In any event, the defendants would be entitled to qualified immunity because there is no clearly-established right to receive free account statements such as the ones at issue in this case. *See, e.g., Saucier v. Katz*, 533 U.S. 194, 201 (2001) (second step in qualified immunity determination is deciding whether a violated right was clearly established at time of violation). *See also Pearson v. Callahan*, 555 U.S. 223 (2009) (qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.").

3.     CONCLUSION

For the reasons discussed above, the Court is obliged to grant the defendants' motions to dismiss and to dismiss this action with prejudice. In

so deciding, the Court must also assess a strike against the plaintiff, pursuant to 28 U.S.C. § 1915(g), because it has determined that the plaintiff's amended complaint "fails to state a claim upon which relief may be granted."

Accordingly,

IT IS ORDERED that the defendants' motion to dismiss (Docket #33) be and the same is hereby GRANTED and this action be and the same is hereby DISMISSED with prejudice; and

IT IS FURTHER ORDERED that the Clerk of Court document that this inmate has incurred a "strike" under 28 U.S.C. § 1915(g).

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 21st day of October, 2014.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge